1  Mark W. Lapham, Esq. (SBN 146352)
   **LAW OFFICES OF MARK W. LAPHAM**
2  751 Diablo Rd.
   Danville, CA 94526
3  TEL:  (925) 837-9007
   FAX: (925) 406-1616
4

5  Attorneys for Plaintiffs
   **MASAZUMI INOUE**
6

7

8              **UNITED STATES DISTRICT COURT**

9         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11 MASAZUMI INOUE                        )   Case No.:
                                         )
12        Plaintiff,                     )   **VERIFIED COMPLAINT**
                                         )
13        v.                             )
                                         )   1. **Wrongful Foreclosure**
14 BANK OF AMERICA, NATIONAL             )   2. **Violation of the Bus. & Profs. Code**
   ASSOCIATION, MORTGAGE                 )      **section 17200** *et seq.*
15 ELECTRONIC REGISTRATION SYSTEMS,      )
   INC. and THE BANK OF NEW YORK         )
16 MELLON f/k/a THE BANK OF NEW YORK     )   **Jury Trial Demanded**
   as ,Trustee for the  ALTERNATIVE LOAN )
17 TRUST 2005-17, MORTGAGE PASS-         )
   THROUGH CERTIFICATES, SERIES 2005-    )
18 17, and Does 1-100, inclusive,        )
                                         )
19        Defendant(s).                  )
                                         )
20                                       )
                                         )
21 _____  )

22

23        Masazumi Inoue (hereinafter "Plaintiff") sues Bank of America, National Association,

24 Mortgage Electronic Registration Systems, Inc and The Bank of New York Mellon f/k/a The Bank

25 of New York as trustee for the Alternative Loan Trust 2005-17, Mortgage Pass-through

26 Certificates, Series 2005-17 (collectively "Defendants") for Wrongful Foreclosure and violation of

27 the Business & Professions Code section 17200 *et seq.*

28

---

**OVERVIEW**

1.    The thrust of Plaintiff's complaint is that none of the named party defendants had standing to sell his home in foreclosure or to collect monthly mortgage payments from him. Defendants Bank of America and Bank of New York Mellon directed Recontrust Company to hold a trustee's sale of Plaintiff's home on April 27, 2012. The Property was sold on that date to Distressed Home Solution, LLC.

2.    On or before May 27, 2005, Plaintiff's mortgage was sold to the Alternative Loan Trust 2005-17 for which defendant Bank of New York Mellon serves as trustee.  The sale of Plaintiff's mortgage to this mortgage-backed securities trust extinguished all beneficial interest in Plaintiff's deed of trust held by Countrywide Home Loans, Inc. ("Countrywide"), the original lender and Mortgage Electronic Registration Systems, Inc. ("MERS"), its nominal beneficiary.

3.    It is important to recognize that Plaintiff's standing argument does not turn on whether or not  the attempt to securitize his loan was successful, that is, comported with the chain of title protocol mandated by the Pooling and Servicing Agreement and other trust documents.  Plaintiff contends that the securitization of his loan, without more, extinguished any interest in his loan held by Countrywide and MERS.  Plaintiff raises the securitization of his loan for the purpose of establishing that none of the Defendants to this lawsuit is a "person entitled to enforce" his mortgage loan within the meaning of Articles 3 and 9 of three Uniform Commercial Code which have been adopted by California.

4.    The courts have consistently followed the clear mandate of our state legislature that only holders of the beneficial interest in a mortgage loan, and their agents acting within the scope of their delegated authority, may initiate and pursue foreclosure activity against a defaulting borrower. *See* Cal Civ. Code sections 29249a) (1) and (a) (6).  The weight of California authority recognizes that where, as in this case, the plaintiff alleges that the sale of the mortgage loan to a securities trust precluded  the defendant from retaining a beneficial interest in the deed of trust and that, consequently, the defendant is not the true beneficiary, has failed to abide by rules regarding transference of the loan and has directed the wrong party to issue the Notice of Default and other foreclosure documents, plaintiff has sufficiently stated a claim for wrongful foreclosure.

5.    As California's non-judicial foreclosure statute provides the only constitutional due process rights afforded to struggling property owners, strict compliance with its provisions is required. *Miller v. Cote* (1982) 127 Cal. App. 3d 888, 894.

6.    Plaintiff's well-supported allegations, which must be accepted as true, are  sufficient to state claims predicated on Defendants' lack of standing to sell Plaintiff's property in foreclosure and liability for violations of the non-judicial foreclosure statute.

## A.    NAMED PARTIES AND JURISDICTION

7.    Plaintiff is the former owner of property which he owns located at 113 Toyon Avenue, South San Francisco, California 94080 (hereinafter "Property" or "Subject Property").

8.    Defendant Bank of America, National Association (hereinafter "BANA") is a nationally chartered bank which is the lead bank within Bank of America Corporation, a financial holding company. BOA's main offices are located at 100 N. Tryon Street, Charlotte, NC  28255. BANA is incorporated in the State of Delaware.  On or about July, 1, 2008, Bank of America Corporation purchased COUNTRYWIDE Financial Corporation, a Delaware Corporation and the parent company of COUNTRYWIDE Home Loans, Inc. ("COUNTRYWIDE"), a New York corporation which was in the business of providing residential mortgage loans. Subsequently, BANA succeeded by merger to BAC Home Loans, Inc.

9.    Defendant Defendant The Bank of New York Mellon ("BNYM") f/k/a The Bank of New York is a nationally chartered bank with its main offices located at 1 Wall Street, New York, N.Y. 10286. BYNM is incorporated in the State of Delaware.  BNYM serves as trustee for the Alternative Loan Trust 2005-17. It is in its capacity as trustee, alone, that BNYM is sued in this action.

10.    Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is organized and  existing under the laws of the State of Delaware. MERS' principal place of business is located at 1818 Library Street, Reston, VA 20190. Therefore, MERS is a citizen of Delaware and Virginia. MERS tracks the ownership interests and servicing rights in mortgage loans and holds title to mortgages solely as a nominee for the banks which subscribe to its services and which are the true

1   beneficial owners of the mortgage loans.

2       11.   This Court has jurisdiction of this action as the residential real property which is the

3   subject of this action is situated in San Mateo County, California and the acts complained of

4   occurred in South San Francisco. The amount in controversy exceeds $75,000 and there exists

5   complete diversity of the parties hereto.  Therefore, this court has jurisdiction of this action pursuant

6   to 28 U.S.C. Section 1332.

7   **B.    MATERIAL FACTS COMMON TO ALL COUNTS**

8       12.   On April 29, 2005, Plaintiff executed an adjustable rate mortgage relating to the Subject

9   Property which consists of a Deed of Trust ("DOT"), Pay Option Adjustable Rate Note with 115%

10  negative amortization and 1-4 Family Rider.  The DOT identifies Countrywide Home Loans, Inc.

11  ("Countrywide") as the lender, Defendant MERS as the nominal beneficiary and CTC Real Estate

12  Services as the trustee. A true and correct copy of the DOT, Adjustable Rate Rider and 1-4 Family

13  Rider  are attached hereto as **Exhibit "A**" and incorporated by reference as though fully set forth

14  herein.

15      13.   The original loan servicer was Countrywide Home Loans Servicing, LP. On or about

16  July 1, 2008, BANA purchased Countrywide and thereafter loans were serviced by BAC Home

17  Loans, Inc. BANA and BAC Home Loans, Inc subsequently merged whereupon BANA purportedly

18  became the servicer of Plaintiff's loan.

19      14.   On or before May 27, 2005, Countrywide, the Sponsor in a securities transaction sold

20  Plaintiff's note and deed of trust to CWALT, Inc., the Depositor in the transaction. CWALT, Inc.

21  then sold Plaintiff's mortgage to The Bank of New York Mellon f/k/a The Bank of New Mellon, the

22  trustee for the Alternative Loan Trust 2005-17 mortgage-backed securities trust.   Plaintiff's

23  mortgage loan is currently represented as part of the trust fund under assigned Trust Identification

24  number 101291796.  *See* true and correct copies of relevant screenshots from the ABSNET database

25  attached hereto as **Exhibit "B"** and incorporated by reference as though fully set forth herein.

26      15. This trust is organized under the laws of New York.  *See* Pooling and Servicing

27  Agreement ("PSA"), dated May 1, 2005, Section 10.03. Due to its length, the PSA is not attached

28  hereto but can be viewed at http://www.secinfo.com/drjtj.z5n4.d.htm.

16.  The PSA requires that all rights to, and interest in, both a mortgage note and deed of trust be sold to the trust.  *See, e.g.*, section 10.04 providing that the Trust holds a security interest in every asset in the trust pool and Section 3.11 describing the Master Servicer's power and obligation to foreclose on properties where the debtor is in default of mortgage obligations.  Therefore, the sale of Plaintiff's mortgage loan to the  Alternative Loan Trust 2005-17 extinguished all title, interests and rights in the loan formerly held by Countrywide and MERS.

17.  The Alternative Loan Trust 2005-17 is a Special Purpose Vehicle formed as a mortgage-backed securities trust in accordance with the Internal Revenue Tax Code of 1986, as amended.  *See* PSA, Preliminary Statement. Upon election and continuing qualification as a REMIC, the income of the trust, *i.e.*, the scheduled mortgagors' payments, is taxed only at the Certificate Holder's (investor's) level.

18.  Pursuant to Section 860 of the Internal Revenue Code, in order for an investment entity to qualify as a REMIC,  all steps in the contribution and transfer of the notes must be a "true and "complete" sale between the parties in order to achieve bankruptcy remoteness. Upon formation of the REMIC-qualified MBS Trust, the Depositor sells the pooled mortgage loans in exchange for the securities certificates issued by the trust.  Each step of the "true sale" process must be supported by effective delivery and certification of acceptance of the receiving party of the endorsed mortgage note and assigned deed of trust, reflecting the complete intervening assignments and transfers of each mortgage loan from each assignor to the last assignee.

19.  The Pooling and Servicing Agreement governing the securitization, in accordance with the requirements of the Tax Code of 1986, provides that only the Depositor, and no other entity, is permitted to make the final assignment and transfer of each mortgage loan to the REMIC MBS trust, and the assignment must be made as of the Closing Date of the trust (May 27, 2005) to maintain the favorable pass-through tax status of the trust entity.  In addition, only performing qualified mortgage loans which are not in default may be placed into the REMIC MBS trust.  Once the trust owns a mortgage loan, only the trustee of the MBS trust has the authority to foreclose, to appoint an agent to foreclose, to assign the deed of trust or substitute a trustee under the deed of trust.

1      20.  The securitization of Plaintiffs' mortgage loan is a transaction designed to comply with

2  the aforementioned requirements of the Tax Code. Specifically, the first "true sale" occurred when

3  Countrywide Home Loans, Inc., securitization Sponsor and Seller, sold the loan to CWALT, Inc.

4  the securitization Depositor. Thereafter, CWALT, Inc. sold the loan to BNYM, the trustee for the

5  Trust.  This was the second true sale.

6      21.  The foregoing sales were made without the required intervening assignment of

7  Plaintiff's  Deed of Trust and endorsement of the Note in contravention of the governing trust

8  documents.

9      22.  On August 25, 2011, MERS, holding itself out as "holder of the DOT", purported to

10  assign Plaintiff's deed of trust and note to The Bank of New York Mellon f/k/a The Bank of New

11  York as trustee for the certificateholders of CWALT, Inc., Alternative Loan trust 2005-17

12  Mortgage Pass-through Certificates, Series 2005-17. A true and correct copy of the Assignment of

13  Deed of Trust is attached hereto as **Exhibit "C"** and incorporated by reference as though fully set

14  forth herein.

15      23.  On September 29, 2011, MERS, falsely holding itself out as the present beneficiary,

16  purported to substitute Recontrust for CTC Real Estate Services as trustee under Plaintiff's deed of

17  trust. The Substitution of Trustee ("SOT") was  recorded on October 3, 2011.  The SOT was

18  executed by Loryn Stone, holding herself out as MERS" Assistant Secretary. The A true and

19  correct copy of the Substitution of Trustee is attached hereto as **Exhibit "D"** and incorporated by

20  reference as though fully set forth herein.

21      24.  On September 29, 2011, Loryn Stone as Assistant Secretary of MERS,  executed an

22  Corporation Assignment of Deed of Trust once again purporting to assign Plaintiff's DOT, together

23  with the Note, to BNYM as trustee for the certificateholders of the Alternative Loan Trust 2005-

24  17.  The Assignment was recorded on October 3, 2011. A true and correct copy of  The

25  Corporation Assignment of Deed of Trust is attached hereto as **Exhibit "E"** and incorporated by

26  reference as though fully set forth herein.

27      25.  As MERS no longer held any interest in Plaintiff's mortgage when it purported to

28  assign the beneficial interest under the deed of trust to BNYM, as trustee, on August 25, 2011 and

1    then again on September 29, 2011, both assignments are null and void.

2         26.   Any interest held by MERS in Plaintiff's mortgage loan was extinguished upon the

3    sale to the MBS Trust for the additional reason that CWALT, Inc, the trust's depositor, has never

4    been  a member of the MERS registry. Once a mortgage is sold, MERS must establish an agency

5    relationship with its new principal, the new beneficiary.  *See*, *e.g*., *In Re Vargus*, 396 B.R. 511

6    (Bankr. C.D. Cal. 2008).

7         27.  MERS' membership rules require that when a promissory note secured by an interest in

8    real property is transferred to a non-MERS member, MERS must execute an assignment of the

9    mortgage loan from MERS to the non-MERS assignee and record the assignment in the county in

10   which the real property is located.  MERS' membership rules further provide once the assignment

11   is filed, the loan is de-activated from the MERS registry.  MERS cannot arbitrarily reinsert itself

12   into the chain of title of Plaintiff's mortgage loan.  As a nominal beneficiary, MERS can only act

13   within the scope of authority delegated to it by the owner of the mortgage loan. Here, there is no

14   agency relationship between MERS and CWALT, Inc.

15        28.   Moreover, MERS never held any interest whatever in Plaintiff's Note.  *"Although*

16   MERS tracks changes in ownership of the beneficial rights for loans registered on the MERS®

17   System, MERS cannot transfer the beneficial rights to the debt. The debt can only be transferred

18   by properly endorsing the promissory note to the transferee." MERS Procedures Manual at 63.

19   MERS Procedure Manual is available for download and inspection from MERS' website at

20   http://www.mersinc.org/MersProducts/manuals.aspx?mpid=1.

21

22        29.  It is black letter law that the deed of trust follows the note but not *vice versa.* For this

23   reason, it is a legal impossibility for MERS to have transferred only the beneficial interest in the

24   DOT to BNYM in 2011. "An assignment of the note carries the mortgage with it while assignment

25   of the latter alone is a nullity". *Carpenter v. Longan* (1872) 83 U.S. 271, 274.  *Accord Henley v.*

26   *Hotaling* (1871) 41 Cal. 22, 28; *Seidell v. Tuxedo Land Co*. (1932) 216 Cal. 165, 170;  UCC

27   Article 9-203(g).

28

30.   Defendants MERS and BNYM knew that the securitization of Plaintiff's mortgage in 2005 failed. They conspired to file the fraudulent[1] and felonious[2] assignment only in preparation for the foreclosure sale of Plaintiff's home to unload a non-performing loan knowing that neither of them had authority to do so.

31.   Contemporaneously with the Corporate Assignment of Deed of Trust Recontrust executed and recorded a Notice of Default ("NOD") against the Plaintiff.  A true and correct copy of the NOD is attached hereto as **Exhibit "F"** and incorporated by reference as though fully set forth herein.

32.    On January 30, 2011, Recontrust recorded a Notice of Trustee's Sale ("NOTS") scheduling the foreclosure sale of Plaintiff's property for January 27, 2011. The scheduled sale was postponed.  A true and correct copy of the NOTS is attached hereto as **Exhibit "G"** and incorporated by reference as though fully set forth herein.

33.   Recontrust sold Plaintiff's property at auction on April 27, 2011 to Distressed Home solution, LLC.  On May 2, 2012, Recontrust executed a Trustee's Deed Upon Sale.  The Deed was recorded on May 7, 2012.    A true and correct copy of  the Trustee's Deed Upon Sale is attached hereto as **Exhibit "H"** and incorporated by reference as though fully set forth herein.

34.    Due to the draconian consequences of a non-judicial foreclosure, strict compliance with the statute's provisions is required.  _Miller v. Cote_ (1982) 127 Cal. App. 3d 888, 894 (a trustee sale based on a statutorily deficient notice of default is invalid).  Here, Defendants illegally conducted a foreclosure sale of Plaintiff's property knowing that none of them was a real party in interest and a person entitled to enforce Plaintiff's mortgage.

[1] Cal. Penal Code §532(f)(a) provides that "a person commits mortgage fraud if, with the intent to defraud, the person does any of the following ... (4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omissions."

[2] California Penal Code Section 115 provides that: Any person who knowingly procures or offer any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine might be filed, registered or recorded under any law of this state or of the United States, is guilty of a felony.

**A. CAUSES OF ACTION**

**COUNT I: WRONGFUL FORECLOSURE**

**(Against MERS, BANA and BNYM)**

35.   Plaintiff re-alleges and incorporates by this reference the allegations contained in theforegoing paragraphs as though set forth fully herein.

36.   A trustee is an agent of the beneficiary of a mortgage loan and unlawful conduct of the trustee is imputed to its principal, the beneficiary.

37.   A trustee has a duty not to conduct an illegal, fraudulent or willfully oppressive sale of property under a power of sale contained in a deed of trust.

38.   A trustee is also liable to a trustor or mortgagor in California upon the basic principle of tort liability enunciated in Civil Code §1709 that every person is bound by law not to injure the person or property of another or infringe on any of his rights. *See also Munger v. Moore,* (1970) 11 Cal. App.3d 1, 7-8.

39. BANA and BNYM, in directing Recontrust to conduct a foreclosure sale of Plaintiff's property, breached their duty to Plaintiff and that breach is the proximate cause of the damages suffered by the Plaintiff.

40.   The interest in Plaintiff's loan formerly held by MERS and its principal, Countrywide, was extinguished as of May 27, 2005, when Countrywide sold the loan, for full loan value, to CWALT, Inc, the Depositor in securitization transaction identified as the Alternative Loan Trust 2005-17.   Accordingly, MERS had no interest to convey to BNYM, in its capacity as trustee for the MBS trust, in 2011.   Therefore the August and September, 2011 assignments from MERS to BNYM are fraudulent, null and void.

41. Recontrust did not have the authority to exercise the power of sale under Plaintiff's deed of trust because MERS did not have the authority to make the substitution, having alienated its interest in Plaintiff's mortgage loan in 2005.   The December, 2011 Substitution of Trustee violates the provisions of Cal. Civil Code section 2934a which requires that the Substitution must be executed and acknowledged by all beneficiaries. MERS was no longer the nominal beneficiary when the substitution was attempted.   Therefore, the SOT is illegal, null and void.

42.   Recontrust could not legally conduct a foreclosure sale of Plaintiff's property for the additional reason that The only Notice of Default filed against the Plaintiffs (Exhibit "F") was executed and recorded on behalf of BNYM. an invalid beneficiary in violation of Cal. Civil Code sections 2924(a)(1)(C) which requires that a (valid) beneficiary provide notice to the borrower of any breaches of mortgage obligations actually known to it. The Notice of Default is the cornerstone of the non-judicial foreclosure statute and failure to comply with the requirements applicable to notices of default constitutes an egregious violation of the statute.

43.   Moreover, the Notice of Default issued against the Plaintiff in 2011, does not, and could not, *accurately* state any breaches of Plaintiff's mortgage obligations in 2012, when Recontrust conducted a foreclosure sale of Plaintiff's property at the direction of Bank of America and on behalf of BNMY as trustee for the certificate holders in the Alternative Loan Trust 2005-17.  Defective notice is no notice at all.  Therefore, Plaintiff was never in default within the meaning of the non-judicial foreclosure statute.

44.   Defendants' egregious violations of California's non-judicial foreclosure statute and common law constitute civil fraud under Cal. Civ. Code sections 1572, 1708, 1709, 1710 2924(a)(1) and criminally actionable fraud under Cal. Penal Code sections 115 and 532(f)(a). These knowing, blatant violations of law have served to deprive Plaintiff of his constitutional due process rights guaranteed by the U.S. Constitution and Art. I section 7 of California's Constitution.

45.   Moreover, Articles 3 and 9 of the federal Uniform Commercial Code ("UCC") set forth the rules determining whether an entity attempting to enforce a promissory note is, in fact, a person entitled to enforce the note", UCC section 3-301, and whether the purchaser of the note or creditor of the payee to whom it was issued obtained a property interest in the note.  UCC section 9-109(a)(3).  Articles 3 and 9 have been adopted by California and are set forth in Divisions 3 and 9 of the California Uniform Commercial Code.

46. The detailed allegations of fact set forth in this Verified Complaint establish that none of the named defendants to this action is "a person entitled to enforce the note" or a purchaser of the

note or creditor of the payee to whom it was issued that obtained a property interest in the note.

47.  The facts show that none of the defendants is a "person entitled to enforce" or is someone who holds some ownership or other interest in the Note.

48. If the "maker", i.e., the person obligated on the note, pays someone other than a "person entitled to enforce", even if that person physically possesses the note the maker signed, then the payment has no effect on the obligations under the note.  The maker still owes the money to the person entitled to enforce. Therefore, payment to a person who is not entitled to enforce the note may place the "maker" in default of his obligations under the note.  See UCC 3-602.

49. The primary purpose of the real party in interest doctrine is to ensure that such mistaken payments do not occur.

50. Moreover, for a mortgage to be in default, the borrower, or maker of the promissory note, must have dishonored the note.  Under UCC section 3-502, a promissory note is not dishonored until the maker refuses to pay it **when presentment thereof is made.**  "Presentment" is defined as a demand to pay the instrument made by a person entitled to enforce an instrument.  The UCC also requires that "[u]pon demand of the person to whom presentment is made, the person making presentment **must** exhibit the instrument.  UCC 3-501(B)(2)(a).

51.   Until proper presentment is made, the UCC requires that the "obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken:... in the case of a note, suspension of the obligation continues until dishonor of the note or until it is paid".  UCC 3-310(b).

52.   Therefore, the borrower(s), here the Plaintiff, is not in default until the lender can exhibit the instrument, proving dishonor.

53.   In initiating and pursuing the aforementioned illegal and fraudulent foreclosure proceedings, MERS, BANA, Recontrust and BNYM,  have acted with willful oppressiveness and malice toward the Plaintiff.

54. Plaintiff has suffered damages proximately caused by the illegal and fraudulent foreclosure activities against him by Defendants, including but not limited to, the loss of his real property, the loss of his down payment on the loan, increased costs and fees assessed against him

1   associated with the wrongful foreclosure activities, ruination of his creditworthiness, severe

2   emotional distress and the costs of retaining a forensic mortgage loan auditor and attorney to

3   investigate the fraudulent and otherwise illegal activities of the defendants.  Plaintiff is also entitled

4   to and seeks punitive damages against MERS, BANA and BNYM as a result of the illegal,

5   fraudulent and willfully oppressive foreclosure activities against Plaintiff that defendants personally

6   conducted as well as those committed by Recontrust at their direction.

7

8          **WHEREFORE,** Plaintiff requests judgment in Plaintiff's favor and an order of the

9   Court:

10      (a) Awarding compensatory damages in an amount to be proved at trial;

11      (b) Emotional distress damages in an amount to be proved at trial; and

12      (c) Punitive damages in an amount sufficient to deter similar conduct on the part of the

13      Defendants in the future.

14

15      **COUNT II:  VIOLATION OF BUSINESS AND PROFESSIONS CODE, §17200 *et seq.***

16                          **(Against All Defendants)**

17      55.    Plaintiff refers to and incorporates by this reference the allegations contained in the

18   foregoing paragraphs as though set forth fully herein.

19      56.    California Business and Professions Code §17200 et seq. prohibits acts of unfair

20   competition, which means and includes any "fraudulent business practice" and conduct which is

21   "likely to deceive" or is "fraudulent" within the meaning of §17200.

22      57.    As more fully described in Count I, above, the acts and practices of Defendants are

23   likely to deceive and constitute fraudulent business acts or practices. This conduct is ongoing and

24   continues to this day.

25      58.    Specifically, and as set forth with greater particularity in preceding paragraphs,

26   BANA engaged, and continues to engage, in deceptive business practices with respect to mortgage

27   servicing by collecting and attempting to collect mortgage payments from Plaintiff on behalf of

28   BNYM, an invalid beneficiary. BANA also directed Recontrust, its wholly-owned subsidiary, to

conduct the illegal foreclosure sale of Plaintiff's property. Defendant MERS  falsely claimed to

1   hold some type of interest in Plaintiffs' loan in 2011 when it assigned Plaintiffs' DOT to BNYM

2   (twice) whereas, in fact, MERS' interest in the loan was extinguished in 2005 when Countrrywide,

3   its principal, sold Plaintiffs' loan to the Alternative Loan Trust 2005-17.  BANA, agent for BNYM,

4   pursued foreclosure activity against the Plaintiff illegally as the assignments of the beneficial

5   interest in Plaintiff's DOT are illegal, null and void.   Consequently, the foreclosure sale of

6   Plaintiff's  home was fraudulent and void.

7        59.  Moreover, the NOD issued against the Plaintiff by Recontrust on behalf of BNYM

8   did not notify him of breaches of his mortgage obligations actually known to the true beneficiary

9   in violation of Cal. Civil Code section 2924(a)(1)(C).  The notification set forth in the NOD is

10  inaccurate. Inaccurate notice is no notice at all.   Therefore, Plaintiff was never in default of his

11  mortgage loan obligations within the meaning of the non-judicial foreclosure statute.

12       60.  Recontrust issued a Notice of Trustee's Sale against the Subject Property in May,

13  2012 at the behest of BANA and BNYM (Exhibit "G").  Pursuant to that NOTS, Plaintiff's home

14  was sold at auction on April 27, 2012.  However, as the NOTS flows from the illegal and VOID

15  assignments from MERS to BNYM (Exhibits "C" and "E") and void NOD (Exhibit "F"), the

16  December, 2011 NOTS  (Exhibit "G") is fraudulent and VOID because none of the defendants had

17  authority to issue it.

18       61.  BNYM falsely claimed to be Plaintiff's creditor.  However, BNYM never received a

19  valid and effective assignment of Plaintiff's deed of trust; therefore, BNYM's foreclosure activity

20  against the Plaintiffs is illegal and void.

21       62.  Therefore, these Defendants are, *inter alia*:

22       a.   Acting as beneficiaries (MERS and  BNYM) without the legal authority to do so in

23  violation of Cal. Civil Code section 2924(a)(1);

24       b.   Failing to comply with California Civil Code §§1708 and1709 (BOA and BNYM as

25  principals of Recontrust);

26       c.   Failing to comply with 2924(a)(1)(C) ( BNYM);

27       d.   Failure to comply with Cal. Civil Code section 2934a (BNYM);

28       e.   Acting as "persons entitled to enforce" Plaintiffs' mortgage loan without authority to do

1    so in violation of Articles 3 and 9 of the national and California Uniform Commercial Codes ( all

2    defendants); and

3        f.    Engaging in other deceptive practices, including those which may be uncovered during

4    the course of discovery.

5        63.   Plaintiff alleges that Defendants' misconduct, as alleged herein, gave, and has given,

6    Defendants, and each of them, an unfair competitive advantage over their competitors.   The

7    scheme implemented by Defendants, in collusion with one another, is specifically designed to

8    defraud California consumers and enrich Defendants at the expense of consumers in this State.

9        64.   By reason of the foregoing, Defendants should be enjoined from continuing such

10    practices pursuant to California Business & Professions Code §§17203 and 17204.   Plaintiff has

11    suffered injury in fact, including but not limited to, monies paid to loan servicers on behalf of

12    invalid beneficiaries and the loss of title to his home, destruction of his creditworthiness, and the

13    down payment he made on the loan.   In addition, Plaintiff has paid fees to a forensic mortgage loan

14    auditor and attorney to learn and defend his property and constitutional due process rights.

15    Undoubtedly, other members of the public, similarly have fallen victim to Defendants' deceptive

16    schemes, are likely to be injured as well.

17        65.   The harm to Plaintiff and to members of the general public outweighs the utility (if

18    any) of Defendants' policies and practices. Consequently, their policies and practices constitute

19    unlawful business acts or practices within the meaning of Business & Professions Code §17200.

20    Moreover, the foregoing conduct promotes an incipient violation of a consumer law, or violates the

21    policy or spirit of such law or otherwise significantly threatens or harms competition.

22        66.   Plaintiff is therefore entitled to injunctive relief and attorney's fees as available under

23    Business & Professions Code §17200 *et seq.* and related sections and under any California private

24    attorney general statutes. The acts and practices described in the foregoing paragraphs are unfair

25    and violate the Business & Professions Code because they constitute violations of all the statutes

26    previously listed above.

27        **WHEREFORE, Plaintiff prays the Court for an Order and Decree that**:

28        a.    Pursuant to Business & Professions Code §17203, Defendants herein, their successors,

1   agents and assigns, representatives, employees, and all persons who act in concert with them, are

2   permanently enjoined from committing all acts of unfair competition in violation of §17200;

3       b.   Plaintiff is entitled to statutory damages including damages available under relevant private

4   attorney general statutes, including Cal. Code Civ. Pro. §1021.5;

5       c.   Plaintiff is entitled to the cost of suit; and

6       d.   Any other relief the Court deems just and proper.

7                            **PRAYER FOR RELIEF**

8       **WHEREFORE,** Plaintiff prays for judgment against the Defendants and each of them as set

9   forth below:

10          1.   For an judgment that the April 27, 2012 foreclosure sale of Plaintiff's property was

11              wrongful;

12          2.   For general, consequential and special damages according to proof;

13          3.   For emotional distress damages;

14          4.   For punitive damages in an amount sufficient to deter the fraudulent conduct set forth

15   with particularity in Counts I and II of this Complaint in the future;

16          5.   For reasonable attorney's fees;

17          6.   For costs of suit herein; and

18          7.   For such other and further relief as the court deems just and proper.

19

20   Dated:  April 7, 2015                **LAW OFFICES OF MARK W. LAPHAM**

21                              By: *//s/Mark W. Lapham_____*
                                        Mark W. Lapham
22                                      Attorney for Plaintiff
                                        MASAZUMI INOUE
23

24

25

26

27

28

1

### **<u>VERIFICATION</u>**

2        I, MASAZUMI INOUE, declare as follows:

3        I am the Plaintiff in this action, and I hereby declare I have read the foregoing Verified

4   Complaint and know the contents thereof and believe that the matters stated therein are true of my

5   own knowledge, except as to those matters which are therein alleged on information and belief, and

6   as to those matters, I believe them to be true.

7        I hereby declare under the penalty of perjury, that the foregoing is true and correct

8        This verification was executed this 6th day of April 2015 in the City and County of San

9   Francisco, California.

10

11                                              //s/Masazumi Inoue_____

12                                              MASAZUMI INOUE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28